IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

IRVING MURRAY,                          :
                                        :
          Plaintiff                     :
                                        :
     v.                                 :    CIVIL NO. 3:CV-17-491
                                        :
JOHN E. WETZEL, ET AL.,                 :    (Judge Conaboy)
                                        :
          Defendants                    :

_____

**MEMORANDUM**
**Background**

Irving Murray, an inmate presently confined at the

Mahanoy State Correctional Institution, Frackville,

Pennsylvania (SCI-Mahanoy), filed the above captioned <u>pro</u> <u>se</u>

civil rights action pursuant to 42 U.S.C. § 1983.  A second

action initiated by the Plaintiff was previously consolidated

into this matter.

By Memorandum and Order dated February 14, 2018, the

Corrections Defendants' motion to dismiss was partially

granted.  <u>See</u> Doc. 123.  Dismissal was granted in favor of

Corrections Defendants Wetzel, Debalso, Mason, Silva, Varner,

Damore, and Hinman.  The allegations of verbal harassment and

for damages under the Pennsylvania Constitution were also

dismissed.

Remaining Defendants are Correct Care Solutions (hereinafter Correct Care) and the following individuals employed at SCI-Mahanoy:  Unit Manager Kevin Kellner, Keri Moore; Health Care Administrator John Steinhart; Doctors Courtney Rodgers, Robert Marsh, Andrew Newton, Paul Noel, and Jay Cowan; Physicians' Assistants R. Miller and Nancy Palmigiano; Nurse Brenda Houser; PSS Amber Voekler; and LPM E. Everding.

Murray states that he suffers from multiple chronic medical problems including asthma, Hepatitis C, hypertension, and epilepsy.  Murray asserts that the SCI-Mahanoy medical staff has been denying him needed treatment and medications in retaliation for his affiliation with a high profile prisoner. The alleged mistreatment has included Murray being required to pay for pain medication, falsification of his institutional medical records, denial of mental health programming, and improper assignment to an upper bunk.  The Complaint seeks declaratory and injunctive relief as well as compensatory and punitive damages.

Presently pending is a motion to dismiss or in the alternative for summary judgment filed by Defendants Correct Care and Doctor Rogers.  <u>See</u> Doc. 61.  The opposed motion is ripe for consideration.

## **Discussion**

With respect to the two Moving Defendants, Plaintiff describes Doctor Rogers as being a licensed and registered physician employed by Correct Care who was directly involved in his treatment at SCI-Mahanoy.  See Doc. 1, p. 11. Murray contends that Rogers fabricated facts in his institutional medical files and denied him chronic care blood pressure, cholesterol, asthma, acid reflux, pain, and anti-viral Hepatitis C medications.[1]  It is also alleged that with respect to his Hepatitis C, Murray was denied viral load testing, an endoscopy, and liver biopsies.  See id. at p. 27.  Plaintiff further claims that Rogers denied him follow up treatment for back pain suffered in a fall from his top bunk.  See id. at p. 18.

The Complaint identifies Correct Care as a private corporation which has been contracted by the Pennsylvania Department of Corrections (DOC) to provide health care for SCI-Mahanoy inmates.  Murray contends that Correct Care and the Pennsylvania Department of Corrections' (hereinafter DOC) Hepatitis C. Committee have failed to adopt proper guidelines for the treatment of state inmates with Hepatitis C.  See id.

---

[1] In part, Plaintiff contends that his records have been altered to reflect that he suffers from paranoia and delusions. See id. at p. 29.

at p. 21.  Plaintiff additionally asserts that a newly

available Hepatitis C medication is only being provided to a

certain number of inmates because of its high cost.

The two Moving Defendants claim entitlement to

dismissal/summary judgment on the grounds that: (1) Plaintiff

failed to exhaust his administrative remedies; (2) there is no

basis for liability against Correct Care; (3) Plaintiff's

claims are barred by the doctrine of <u>res judicata</u>; (4) Murray

fails to state a viable claim of deliberate indifference

against Doctor Rogers; and (5) the speculative allegation of

conspiracy is insufficient.

**<u>Motion to Dismiss</u>**

Moving Defendants' pending dispositive motion is

supported by evidentiary materials outside the pleadings.

Federal Rule of Civil Procedure 12(d) provides in part as

follows:

> If, on a motion under Rule 12(b)(6) or
> 12(c), matters outside the pleading are
> presented to and not excluded by the
> court, the motion must be treated as one
> for summary judgment under Rule 56. All
> parties must be given reasonable
> opportunity to present all the material
> that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials

accompanying Moving Defendants' motion.  Thus, it will be

4

construed as solely seeking summary judgment. See <u>Latham v.</u> <u>United States</u>, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing is sufficient to place the parties on notice that summary judgment might be entered).

**<u>Summary Judgment</u>**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>See also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. <u>Id</u>. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. <u>Saldana</u>, 260 F.3d at 232; <u>see also</u> <u>Reeder v. Sybron Transition Corp.</u>, 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not

considered evidence of asserted facts.  <u>Versarge v. Township of Clinton</u>, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  <u>Id</u>. (internal quotations omitted); <u>see</u> <u>also</u> <u>Saldana</u>, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  <u>Celotex</u>, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989).

**<u>Res</u> <u>Judicata</u>**

The initial argument for summary judgment asserts that Plaintiff previously filed a civil rights action in the United States District Court for the Western District of Pennsylvania which similarly asserted that Murray was being denied proper treatment for Hepatitis C. Since that was addressed on its merits, the Moving defendants argue that the consideration of Plaintiff's pending action is barred by <u>res judicata</u>. <u>See</u> Doc. 62, p. 22.

The complex doctrine of <u>res judicata</u> restricts relitigation of issues. <u>Res judicata</u> requires "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." <u>United States v. Athlone Indus., Inc.</u>, 746 F.2d 977, 983 (3d Cir. 1984).

<u>Res judicata</u> precludes a party both from relitigating matters already litigated and from litigating matters that have never been litigated, yet should have been advanced in an earlier suit. <u>Huck v. Dawson</u>, 106 F.3d 45 (3d Cir. 1997) (quoting <u>Julien v. Committee of Bar Examiners</u>, 923 F. Supp. 707, 716 (D.VI 1996)).

Plaintiff's prior action in the Western District did not named Doctor Rogers as a Defendant and did not concern his medical treatment at SCI-Mahanoy. As such, any claims related

to either Defendant Rogers or subsequent conduct at SCI-Mahanoy are not barred by res judicata.

Some of the claims presently asserted against Defendant Correct Care are similar to those raised and dismissed by the Western District in Plaintiff's earlier action. Moreover, while Correct care was named as a Defendant in that earlier action, the treatment protocol at issue herein was not developed until after the filing of that action. Accordingly, although there was a final judgment on the merits entered in Plaintiff's prior suit, since Rogers was not named as a Defendant in that matter and the claims presently raised against Correct Care are not the same, the doctrine of res judicata does not preclude consideration of Plaintiff's pending action.

**Personal Involvement**

The Moving Defendants' second argument contends that any attempt by Plaintiff to establish liability against Correct Care based upon a theory of supervisory liability or the Hepatitis C protocol developed by the DOC must fail. See Doc. 62, p. 10. They add that there is no discernible claim that Correct care maintained any policy which caused harm to Murray.

A plaintiff, in order to state an actionable civil rights

claim, must plead two essential elements:  (1) that the
conduct complained of was committed by a person acting under
color of law, and (2) that said conduct deprived the plaintiff
of a right, privilege, or immunity secured by the Constitution
or laws of the United States.  See Groman v. Township of
Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v.
Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under §
1983 cannot be premised on a theory of respondeat superior.
Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).
Rather, each named defendant must be shown, via the
complaint's allegations, to have been personally involved in
the events or occurrences which underlie a claim.  See Rizzo
v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison
Officials, 546 F.2d 1077 (3d Cir. 1976).  As explained in
Rode:

> A defendant in a civil rights action must have
> personal involvement in the alleged wrongs. . .
> . [P]ersonal involvement can be shown through
> allegations of personal direction or of actual
> knowledge and acquiescence.  Allegations of
> participation or actual knowledge and
> acquiescence, however, must be made with
> appropriate particularity.

Rode, 845 F.2d at 1207.

In order to establish a viable § 1983 claim against a

private corporate entity such as Correct Care, it must be asserted that said Defendant had a policy, practice, or custom which caused injury to the plaintiff. See Adonai-Adoni v. King, 2009 WL 890683 * 2 (E.D. Pa. March 31, 2009) (a private health care provider can only be liable under § 1983 if claim rests upon some policy, practice or custom); see also Riddick v. Modery, 250 Fed. Appx. 482, 483-84 (3d Cir. 2007); Carpenter v. Kloptoski, 2010 WL 891825 * 8 (M.D. Pa. March 10, 2010)(§ 1983 claim against private medical service solely on the basis that it was responsible for providing health care is subject to dismissal).

Based on an application of the above standards to Murray's allegations, it is apparent that he may, at least in part, be attempting to establish liability against Correct Care on the basis that it employs members of the SCI-Mahanoy medical staff who were involved in the Plaintiff's care. Under the standards developed in Rode, this Court agrees that any such assertions are insufficient for purposes of establishing liability under § 1983. See Hetzel v. Swartz, 909 F. Supp. 261, 264 (M.D. Pa. 1995)(private corporate employer cannot be held vicariously liable for employee's conduct).

Murray's pro se Complaint includes a claim that Plaintiff

10

was denied medication and testing due to the Hepatitis C protocol which was in place at SCI-Mahanoy. However, given Plaintiff's repeated acknowledgments in his Complaint, it was the DOC not Correct Care which developed the protocol for the treatment of Hepatitis C inmates

Given Plaintiff's admission that it was the DOC which created, implemented, and maintained a Hepatitis C protocol there is no basis for a claim against Correct Care based upon a claim that Murray did not qualify for certain treatment under the DOC Hepatitis C policy. There is also no other discernible claim that Correct Care created any specific policy, practice or custom which caused harm to the Plaintiff. As such, Defendant Correct care is entitled to entry of summary judgment.

## **Administrative Exhaustion**

Plaintiff states that he filed two grievances relating to his claims of inadequate medical treatment, Nos. 651442 (regarding the DOC's interim Hepatitis C protocol) & 650448. See Doc. 1, ¶ II. Murray vaguely contends that his pursuit of grievances was blocked or frustrated by Defendants in order to prevent consideration of this action. The Plaintiff concludes that since he has made every reasonable attempt to exhaust his administrative remedies, this action should be allowed to

proceed.  See id. at p. 5.

Moving Defendants state that according to records they subpoenaed from the DOC, Murray submitted two grievances for final administrative review both of which concerned his Hepatitis C treatment.  Grievance 487208 which was dismissed for procedural reasons and Grievance 54932 which was referred to the DOC's Bureau of Health Care Services for consideration and was still pending when this matter was initiated. Moreover, the DOC records show that any claim by Murray regarding treatment for injury suffered from a fall from a top bunk or falsification of institutional medical records were not presented to SOIGA.  They conclude that since Plaintiff has not filly exhausted his DOC administrative remedies with respect to any of his pending claims, entry of summary on the basis of non-exhaustion is appropriate.

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to
> prison conditions under Section 1979 of
> the Revised Statutes of the United States
> (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail,
> prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered

12

through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement." Brown v. Croak, 312 F.3d 109, 112 (3d cir. 2002) (citing Nyhuis, 204 F.3d at 75. The Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or

demonstrate exhaustion in his or her complaint.  <u>See</u>, <u>Jones</u>,
549 U.S. at 216;  <u>see</u> <u>also Ray v. Kertes</u>, 285 F.3d 287 (3d Cir.
2002)(a prisoner does not have to allege in his complaint that
he has exhausted administrative remedies).  Rather, pursuant to
the standards announced in <u>Williams v. Runyon</u>, 130 F.3d  568,
573 (3d Cir. 1997), it is the burden of a defendant asserting
the defense of non-exhaustion to plead and prove it.[2]

   The Pennsylvania Department of Corrections ("DOC") has
established a Consolidated Inmate Grievance Review System which
has been periodically amended.  Section V of DC-ADM 804
(effective December 8, 2010) states that "every individual
committed to its custody shall have access to a formal
procedure through which to seek the resolution of problems or
other issues of concern arising during the course of
confinement."  <u>See</u> Doc. 29, p. 8.  It adds that the formal
procedure shall be known as the Inmate Grievance System and
provides a forum of review and two (2) avenues of appeal.
Section VI ("Procedures") of DC-ADM 804 provides that, after
attempted informal resolution of the problem, a written
grievance may be submitted to the Facility Grievance

---

[2] In <u>Mitchell v. Horn</u>, 318 F.3d 523, 529 (3d Cir. 2003), the
United States Court of Appeals for the Third Circuit similarly
stated that "[f]ailure to exhaust administrative remedies is an
affirmative defense for the defendant to plead."

Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

Moving Defendants acknowledge that on November 8, 2016 Plaintiff initiated Grievance No. 651442 regarding his lack of Hepatitis C treatment. They add that SCI-Mahanoy Health Care Administrator Steinhart provided an unfavorable initial response to that grievance on November 29, 2016. See Doc. 62, p. 2. The response noted that Plaintiff's lab results were normal, the inmate had failed to show for some medical appointments, he was not in imminent danger, and any decision as to the need for a liver biopsy or other Hepatitis testing would be made by a higher authority. Murray unsuccessfully appealed that response to the Facility Manager on November 30,

2016. However, the Moving Defendants maintain that based upon undisputed DOC records a final SOIGA appeal was not completed.

The undisputed record establishes that the DOC had an established grievance procedure in place during the relevant time period. In his Compliant Plaintiff acknowledges that he failed to fully exhaust his administrative remedies. <u>See</u> Doc. 1, ¶ II.  Based upon Murray's own admission and the Moving Defendants' undisputed factual submissions this Court is satisfied that the Moving Defendants have satisfied their burden of establishing  that Plaintiff failed to fully and properly pursue any of his pending Hepatitis C related claims to final administrative review.  Accordingly, those claims against the Moving Defendants are unexhausted.

Second, the submitted DOC record also show that Plaintiff has not completely and properly administratively exhausted any claim pertaining to his Hepatitis C treatment at SCI-Mahanoy. Accordingly those claims are likewise unexhausted.

With respect to Murray's argument to be excused from the exhaustion requirement.  The Plaintiff was clearly aware of the grievance procedure and pursued grievances.  Moreover, it is undisputed that he presented two final administrative reviews to SOIGA, one of which was still pending when this matter was initiated.  Those factors clearly undermine the vague,

factually unsupported claim by Murray that his attempts to pursue administrative relief were frustrated or impeded by correctional officials.

Based upon the determination that none of Murray's pending claims were properly exhausted as well as Plaintiff's failure to provide a viable reason to excuse his failure to exhaust, a finding of non-exhaustion and entry of summary judgment in favor of the Moving Defendants under the well-settled <u>Spruill</u> and <u>Woodford</u> standards is appropriate.

## **Deliberate Indifference**

Murray's pending complaint alleges that as a result of Doctor Rogers' implementation of the DOC's new interim protocol he is being denied newly approved medication (Harvoni). Murray further claims that Doctor Rogers fabricated facts in his institutional medical files and denied him free chronic care blood pressure, cholesterol, asthma, acid reflux, and pain medication.[3] With respect to his Hepatitis C, Plaintiff claims that he was denied anti-viral medications, viral load testing, an endoscopy, and liver biopsies. <u>See</u> <u>id</u>. at p. 27.

It is also asserted that following a fall from the top bunk of his cell Plaintiff received x-rays and pain medication

---

[3] In part, Plaintiff contends that his records have been altered to reflect that he suffers from paranoia and delusions. <u>See</u> <u>id</u>. at p. 29.

by a Physician's Assistant.[4]  Murray maintains that Doctor

Rogers thereafter denied him follow up treatment for back pain

suffered in the fall.  See id. at p. 18.  Specifically, in

response to an inmate request Rogers told Plaintiff that he was

not scheduled for Chronic Care Clinic for several months and

that he should report to sick call with any other medical

issues and that he could purchase pain medication from the

prison commissary.

Moving Defendants argue that the facts pled in the

Complaint do not support an Eighth Amendment claim.  See Doc.

62, p. 11.  With respect to Murray's Hepatitis C treatment,

they note that the Complaint acknowledges the inmate's

condition was routinely monitored and that Doctor Rogers

properly acted in accordance with the DOC's protocol.  Second,

they contend that since Murray admits that he was timely

treated following his fall by other members of the prison's

medical staff there is no basis for liability against Rogers.

Third, instructing the Plaintiff to purchase over the counter

pain medication (Ibuprofen) from the prison commissary was not

unconstitutional.  Finally, Moving Defendants state that the

bald factually unsupported allegation Rogers participated in

---

[4] Records provided by Plaintiff indicate that he was on bottom
bunk status since his arrival at SCI-Mahanoy.  See Doc. 1-1, p. 47.

19

alteration/fabrication of Murray's institutional medical records is insufficient.

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety.  See Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir.  2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's

serious medical needs (the objective component).  Monmouth Cty.
Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir.
1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by
a physician as requiring treatment or one that is so obvious
that a lay person would easily recognize the necessity for a
doctor's attention."  Mines v. Levi, 2009 WL 839011 *7 (E.D.
Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023);
Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f
unnecessary and wanton infliction of pain results as a
consequence of denial or delay in the provision of adequate
medical care, the medical need is of the serious nature
contemplated by the Eighth Amendment."  Young v. Kazmerski, 266
Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr.
Inst. Inmates, 834 F.2d at 347).

With respect to the serious medical need requirement,
Plaintiff identifies himself as suffering from Hepatitis C,
asthma, and other chronic conditions.  There is no argument by
the Moving Defendants that Plaintiff's Complaint fails to
satisfy the serious medical need requirement with respect to
the deliberate indifference claims pertaining to those
conditions.  This Court likewise agrees that based upon the
nature of Plaintiff's allegations it cannot be concluded that

he was not suffering from an objectively serious medical need.

However, with respect to injuries allegedly suffered by Plaintiff due to a fall from the top bunk of his cell, they do not appear to be of such magnitude as to satisfy the serious medical need requirement.  See Wesson v. Igelsby, 910 F. 2d 278, 284 (5th Cir. 1990)(swollen wrists not a serious medical need); Price v. Engert, 589 F. Supp.2d 240, 246 (W.D.N.Y. 2008)(wrist and hand injuries do not satisfy the serious medical need requirement); Stankowski v. Farley, 251 Fed. Appx. 743, 748 (3d Cir. 2007)(cuts requiring no more than small bandages do not constitute serious medical needs covered by the Eighth Amendment).

Under the subjective deliberate indifference component of Estelle, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."  Farmer v. Brennan, 511 U.S. 825, 841 (1994).  A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical

treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

It is undisputed that following his fall from the top bunk Plaintiff received timely medical care including x-rays and a prescription of Ibuprofen for pain. There is no assertion that Doctor Rogers was involved in that initial evaluation and treatment. When the Ibuprofen prescription ran out, Plaintiff contacted Rogers and was told by the Defendant that if he had continuing problems related to his fall he should report for sick call and that he could purchase Ibuprofen from the prison commissary.

Plaintiff apparently seeks in part to establish liability against Doctor Rogers because she did not provide him with a free refill of the Ibuprofen prescription. The United States

Court of Appeals for the Third Circuit has recognized that charging inmates for medical expenses is not per se unconstitutional. See Reynolds v. Wagner, 128 F. 3d 166 (3d Cir. 1997); McCabe v. Pennsylvania Department of Corrections, 523 Fed. Appx. 858, 860-61 (3d Cir. 2013) (although prisoners cannot be denied essential or needed medical care, a modest fee may be charged for non-emergency medication); Quinnones v. Fischi, 2012 WL 1072278 (M.D. Pa. March 29, 2012)(Nealon J.).

Based upon the facts described by Plaintiff, the allegation that there was an instance where Doctor Rogers indicated that he could purchase Ibuprofen for a non-emergency medical condition does not rise to the level of a viable constitutional violation. It is also noted that a grievance response to Murray from Rogers which is attached to the Complaint notes that Plaintiff was provided with medication for asthma, constipation, iron deficiency anemia, and seizures. See Doc. 1-1, p. 56. Rogers added that Murray did not require blood pressure or cholesterol medication and had failed to show up for multiple follow up appointments. See id. Pursuant to the above discussion, entry of summary judgment in favor of Defendant Rogers with respect to the claim that follow up care for injuries from the fall was denied is appropriate.

Second, Plaintiff makes a vague claim that Doctor Rogers

participated in "falsification of official medical records and conspiratory [sic] inappropriate misconduct of state officials." Doc. 1, p. 11. The Complaint adds only that Rogers erroneously indicated that Plaintiff was non-compliant with previously prescribed treatment.

It appears that Plaintiff is challenging the aforementioned grievance response wherein Rogers stated the following: Plaintiff was seen multiple times at sick call medication line and chronic care clinic; he failed to show for many follow up appointments; Murray was provided with medication for asthma, constipation, iron deficiency anemia, and seizures but did not require blood pressure or cholestrol medication; Plaintiff was only partially compliant with seizure and psych medications; he was treated for fall from top bunk with benign findings. See Doc. 1-1, p. 56. While Plaintiff is apparently voicing his disagreement with Rogers' assessment that the inmate was non-compliant with his treatment at times, this challenged assessment did not constitute deliberate indifference to a medical need as there is no indication that the assessment resulted in any change or reduction in the treatment being provided to Murray.

Hepatitis C is admittedly a progressive disease which causes liver damage, and in some instances death. Due to

Hepatitis' progressive nature, the timing of treatment is important and there is a higher success rate when treatment is initiated at an early stage. See Lee v Sewell, 159 Fed. Appx. 419, 421 (3d Cir. 2005)(prisoner's claim of being denied Hepatitis C medication for six months sets forth a viable claim of deliberate indifference).

Murray contracted Hepatitis C in or around 2000. See Murray v. Department of Corrections, Civil No 15-48, slip op. at p. 3. (W.D. Pa. Nov. 16, 2016). He did not receive any treatment prior to 2010 and thereafter underwent periodic diagnostic testing for his illness. See id. During a previous period of incarceration at SCI-Albion between 2012-2015 he was regularly screened and evaluated and was a participant in the prison's Chronic Hepatitis Clinic. See id. at p. 6.

Plaintiff states that he reentered prison as a parole violator on October 14, 2016. See Doc. 1, p. 15. He admits that he was not receiving any Hepatitis C treatment at the time he entered SCI-Mahanoy. See id. at p. 27. While at SCI-Mahanoy Murray was assigned to the Chronic Care Clinic. See id. at p. 18. He also received treatment by the prison's mental health staff.

Murray's pending complaint vaguely alleges that his Hepatitis C was not properly monitored and that as a result of

the DOC's new interim protocol he is being denied newly
approved medication (Harvoni) because it is too expensive.

Based upon a liberal consideration of Plaintiff's
allegations, the subjective deliberate indifference component
has not been met with respect to Defendant Doctor Rogers.
In the present case there is no indication or claim that Doctor
Rogers was involved in the creation or implementation of the
DOC's current Hepatitis C protocol.  As such, any claims
against Doctor Rogers based upon the whether the protocol is
constitutionally acceptable is not properly raised against
Rogers.  Moreover, since there are no facts showing that the
provisions of the protocol were medically improper, any actions
taken by Rogers in compliance with the DOC's Hepatitis C
protocol are insufficient to set forth a claim of deliberate
indifference by that physician.

It is undisputed that although Plaintiff has been
medically determined not to be presently eligible for new anti-
viral medication he continues to be periodically monitored and
tested via the prison's Hepatitis C Chronic Care Clinic.  Thus,
this is not a case where no Hepatitis treatment is being
provided.  Plaintiff's claims as stated appear at best to
represent his disagreement with determinations or assessments
made by Doctor Rogers based upon the results of diagnostic

27

testing and application of the DOC's Hepatitis C protocol, at best, such allegation asserts claims of negligence by Dr, Rogers which are not properly pursued in a civil rights action.

Entry of summary judgment will be granted in favor of Doctor Rogers with respect to the allegations of deliberate indifference.

**Conspiracy**

Moving Defendants maintain that the speculative assertion that Doctor Rogers was part of a conspiracy does not set forth a viable claim. <u>See</u> Doc. 62, p. 22.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. <u>D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992), <u>cert. denied</u>, 506 U.S. 1079 (1993); <u>Rose v. Bartle</u>, 871 F.2d 331, 366 (3d Cir. 1989); <u>Durre v. Dempsey</u>, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit Court of Appeals has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." <u>Rose</u>, 871 F.2d at 366. Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." <u>Shearin v. E.F. Hutton Group, Inc.</u>, 885

F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. See D.R. by L.R., 972 F.2d at 1377; Durre, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. Id.; Rose, 871 F.2d at 366; Young, 926 F.2d at 1405 n.16; Chicarelli v. Plymouth Garden Apartments, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. Deck v. Leftridge, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n. 16 (3d Cir. 1991).

There are no averments of fact in the Complaint that reasonably suggest the presence of an agreement or concerted activity involving Doctor Rogers. Murray has simply not alleged any facts showing any communication or cooperation among any Defendants from which an agreement could be inferred. While Plaintiff raises claims of constitutional misconduct, he

29

has not adequately alleged that those actions were the result of a conspiracy.  Summary judgment will be granted with respect to the claim of conspiracy against Defendant Rogers.

**Pendent Jurisdiction**

Murray indicates that he wishes to pursue state law claims against the defendants.  <u>See</u> Doc. 1, p. 7.  Federal courts have jurisdiction over state claims which are related to the federal claims and result from a common nucleus of operative facts.  <u>See</u> <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 725 (1966); <u>see</u> <u>also</u> <u>Aldinger v. Howard</u>, 427 U.S. 1, 9 (1976).  A district court may decline to exercise supplemental jurisdiction over a claim when the court has dismissed all claims over which it has original jurisdiction.  <u>See</u> 28 U.S.C. § 1367(c)(3) (1997).  Decisions regarding pendent jurisdiction should be premised on considerations of judicial economy, convenience and fairness to the litigants.  <u>New Rock Asset Partners v. Preferred Entity Advancements</u>, 101 F.3d 1492, 1505 (3d Cir. 1996)(citation omitted).

Once jurisdiction has been exercised over the state claim, elimination of the federal claim does not deprive the court of jurisdiction to adjudicate the pendent claim.  <u>Id</u>. (citing <u>Lentino v. Fringe Emp. Plans, Inc.</u>, 611 F. 2d 474, 479 (3d Cir. 1979)).  However, when the federal claim is dismissed prior to

trial, a district court should decline to decide the pendent state claims, "unless considerations of judicial economy, convenience, and fairness provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

Since all of the Plaintiff's federal claims against Defendants Correct Care and Rogers in this matter have been dismissed, jurisdiction will be declined with respect to any state law claims against those two Defendants. An appropriate Order will enter.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: MARCH 15, 2017